# FOR PUBLICATION

APPELLANT, PRO SE:

**JOHN LANE-EL**
New Castle, Indiana

ATTORNEY FOR APPELLEES:

**ANGELA S. JOSEPH**
Office of Corporation Counsel
Indianapolis, Indiana

FILED

Jul 09 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN LANE-EL, | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1306-PL-289 |
| | ) | |
| MICHAEL SPEARS, in his official capacity | ) | |
| of Chief of Police, and the Indianapolis Police | ) | |
| Department, | ) | |
| | ) | |
| Appellees/Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-0610-PL-44021

**July 9, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

John Lane-El ("Lane-El"), pro se, appeals the trial court's grant of summary judgment in favor of the Indianapolis Police Department (the "IPD")[1] and Michael Spears in his official capacity as Chief of Police ("Chief Spears") (collectively, "the Defendants"), as well as the trial court's denial of his motion for in camera review.

We affirm in part and reverse in part.

ISSUES

1. Whether the trial court abused its discretion when it granted the Defendants' cross-motion for summary judgment.

2. Whether the trial court committed a clear error when it denied Lane-El's motion for in camera review.

FACTS

Lane-El was convicted of a sex crime and is currently incarcerated. On January 9, 2006, while incarcerated, Lane-El filed a request for public records with the IPD pursuant to the Indiana Access to Public Records Act ("APRA"). He requested records related to his criminal case, including:

> 1. The original or a true and accurate copy of the tape or audio recording of the 911 emergency call (including any transcripts) received by [the IPD] on November 17, 1992, regarding an accident which occurred at . . . Indianapolis, Indiana, Marion County, at approximately 9:42 a.m., case no. 068756G;
>
> 2. The original or a true and accurate copy of the tape or audio recording of the "Voluntary Statement" of [the confidential informant], taken by [the

---

[1] The Indianapolis Police Department is now the Indianapolis Metropolitan Police Department, but for purposes of this opinion we will refer to it as the Indianapolis Police Department since it was the Indianapolis Police Department at the time of Lane-El's complaint.

IPD], Detective Monica Endres on November 18, 1992, including but limited to any and all transcripts (draft or final) of said statement;

3. The original or a true and accurate copy of the tape or audio recording of the "Voluntary Statement" of John Lane taken by the Indianapolis Police Department on November 17, 1992, by [D]etective Monica Endres, including but not limited to any and all transcripts (draft or final) of said statement;

4. The original or a true and accurate copy of any videotape of the scene located at . . . , by [the IPD] (or its agents or employees) as a result of or with regard to the sexual assault or resulting investigation that occurred at that location on November 17, 1992, regardless of whether the videotape was taken by or on behalf of [the IPD] or the Marion County Prosecutor's Office;

*        *        *

5. The original or a true and accurate copy of any notes, reports, interdepartmental communications, telephone messages or other documentation regarding communications between IPD Detective Monica Endres and [the confidential informant] for the time period of November 17, 1992, to the present (including but not limited to communications between them on November 18, 1992[);]

6. The original or a true and accurate copy of any notes, reports, inter-departmental communications or other documentation or file[s] maintained by [the IPD] or IPD [D]etective Monica Endres regarding [the confidential informant's] status as a confidential informant, including but not limited to any documents that reflect the process or progress made to establish or attempt to establish [the confidential informant] as a confidential informant for the time period of January 1, 1992, through the present;

7. A true and accurate copy of the negatives from [the IPD] Photo Unit, Photo File Number 068756G;

8. To the extent not covered by request no. 7 above, please produce a complete copy of the color photographs taken by [the IPD] of the scene located at . . . Indianapolis, Marion County, Indiana, regarding an incident that occurred at that location on November 17, 1992, case no. 068756G;

9. A true and accurate copy of all handwritten notes, reports, or inter-departmental communications prepared by or at the direction of [D]etective

3

Monica Endres (a/k/a Monica Knist), with regard to an incident that occurred at . . . Indianapolis, Marion County, Indiana, on November 17, 1992, case no. 068756G;

10. A true and accurate copy of all handwritten notes, reports, or inter-departmental communications prepared by IPD Officer James Harris with regard to an incident that occurred 30th and Arlington at a 500 Liquor Store, 2927 N. Arlington; and at . . . Indianapolis, Marion County, Indiana on November 17, 1992, under case no. 068756G;

11. A true and accurate copy of all handwritten notes, reports, or inter-departmental communications prepared by IPD Officer Steven Staal with regards to an incident that occurred at 30th and N. Arlington at a 500 Liquor Store, 2927 N. Arlington; and at . . . Indianapolis, Marion County, Indiana on November 17, 1992, case no. 068756G;

12. A true and accurate copy of all handwritten notes, reports, or inter-departmental communications prepared by IPD Officer William Estes with regards to an incident that occurred at 30th and Arlington at a 500 Liquor Store, 2927 N. Arlington; and at . . . Indianapolis, Marion County, Indiana, on November 17, 1992, case no. 068756G; and[]

13. A true and accurate copy of all handwritten notes, reports, diagrams, photographs, videotape recordings or inter-departmental communications prepared by or at the directions of Crime Lab Technician, R. Layton, with regards to an incident that occurred at . . . Indianapolis, Marion County, Indiana on November 17, 1992, case no. 068756G.

(App. 193-95).

The IPD did not respond to Lane-El's request, and on May 1, 2006, he sent an additional request. Again, the IPD did not respond. On May 31, 2006, Lane-El filed a formal complaint with the State of Indiana's Public Access Counselor, Karen Davis ("Davis"). Davis sent a letter to the IPD requesting its response to the complaint by June 21, 2006. On July 5, 2006, after not hearing from the IPD, Davis found that the IPD had violated the APRA by failing to respond to Lane-El.

4

Subsequently, on July 27, 2006, Lane-El filed a complaint against the IPD and Chief Spears, in his official capacity as the Chief of the IPD, requesting that the trial court compel the IPD to comply with his public records request. On December 15, 2006, Lane-El moved for a default judgment. The Defendants filed a motion to dismiss and a response to Lane-El's motion for default judgment on January 25, 2007, arguing that Lane-El had failed to properly serve them. The trial court granted the Defendants' motion without prejudice. However, Lane-El appealed, and this Court reversed and remanded the trial court's decision on December 14, 2007. *See Lane-El v. Spears*, No. 49A02-0705-CV-396 (Ind. Ct. App. Dec. 14, 2007). We held that Lane-El's service was reasonably calculated to inform the Defendants that he had instigated a suit against them.

On April 23, 2007, the City of Indianapolis's Public Access Counselor, Lauren Toppen ("Toppen"), sent Lane-El a letter responding to his public records request. She informed Lane-El that there were no documents responsive to the first item in his request and that items two through thirteen were exempt from disclosure under the APRA because they were compiled in the course of an investigation. However, Toppen conceded that the incident report Lane-El had requested in his request numbers 10, 11, and 12 contained information the Act required to be disclosed. She provided Lane-El with the report but redacted certain portions that the Act required to remain confidential, such as the name and age of the victim.

Two years later, in January of 2009, the Defendants filed a motion to dismiss Lane-El's complaint for a failure to prosecute. Lane-El acquired new counsel, and his new counsel filed a response to the motion arguing that the failure to prosecute was the

5

previous court-appointed attorney's fault, not Lane-El's. On February 2, 2009, the trial court denied the Defendants' motion. Subsequently, on May 9, 2012—over three years later—the Defendants filed another motion to dismiss, again arguing that Lane-El had failed to prosecute his claim. The trial court held a hearing on July 16, 2012, and denied the motion but ordered the parties to file dispositive motions by September 30, 2012.

On October 4, 2012, Lane-El filed a motion for summary judgment pro se, contending that there were no genuine issues of material fact and that the undisputed facts showed that the Defendants had violated the APRA. The Defendants responded in opposition to Lane-El's motion on February 11, 2013, and also filed their own cross-motion for summary judgment. They argued that: (1) the IPD was a not a separate suable entity; (2) Chief Spears was immune from suit under the Indiana Tort Claims Act ("ITCA"), because at all times he was acting in the course and scope of his employment; (3) the IPD had already responded to Lane-El's request by sending him Toppen's letter and the redacted incident report; and (4) the remaining records Lane-El sought were investigatory records subject to release only at the discretion of the IPD under the APRA. Lane-El responded and argued, among other points, that Toppen's letter was unsworn, and thus, could not be used as evidence in a cross-motion for summary judgment. On February 25, 2013, Lane-El also filed a motion for in camera review of his requested public records.

On June 6, 2013, the trial court entered an order denying Lane-El's motions for summary judgment and in camera review and granting the Defendants' cross-motion for summary judgment. The court found that: (1) the IPD was not suable under Indiana law;

6

(2) Chief Spears was immune from suit under the ITCA; (3) the documents Lane-El had requested were investigatory in nature and exempt from public access; and (4) Toppen's letter providing Lane-El with the incident report was proper designated evidence. Lane-El now appeals. We will provide additional facts as necessary.

## DECISION

On appeal, Lane-El argues that the trial court abused its discretion in granting the Defendants' cross-motion for summary judgment. He argues that: (1) the IPD is a public agency subject to the APRA; (2) the trial court abused its discretion in finding that the records were exempt; and (3) the trial court abused its discretion in denying his motion for an in camera inspection. We will address each in turn.

### 1. Proper Parties

As a preliminary matter, we must address whether the IPD and Chief Spears are proper parties to Lane-El's claim. The trial court concluded that they are not because the IPD is not an entity that may be sued under Indiana law and because Chief Spears is immune from suit under the ITCA. Lane-El does not directly raise this issue but indirectly contends that the IPD was a proper party because it was subject to the APRA. Regardless of whether Lane-El raises the issue, though, it is one we must address in order to determine whether we may decide this case.

#### A. *The IPD*

The trial court held that the IPD did not have the capacity to be sued based on Indiana Trial Rule 17 and the Indiana Code's definition of municipal corporations. First, the court cited Indiana Trial Rule 17(B), which provides that "[t]he capacity of a party to

7

sue or be sued shall be determined by the law of this state, including its conflict rules, except that a partnership or unincorporated association may sue or be sued in its common name." Then the trial court noted that municipal corporations are suable under Indiana law and found that the IPD did not meet the statutory definition of municipal corporations. As a result, the trial court determined that the IPD was not suable. It is not clear, however, why the court found that the IPD was unsuable because it did not meet the definition of municipal corporations. There are certainly other categorical entities that are suable under Indiana law, and, contrary to the trial court's ruling, we find that the IPD is one such entity.

As the trial court noted, the capacity of a party to sue or be sued is determined by Indiana law. *See* T.R. 17(B). Indiana law includes "[a]ll statutes of the general assembly of the state" that are in force and consistent with the Indiana Constitution, such as the APRA. IND. CODE § 1-1-2-1. In the APRA, the Legislature established the procedure for disputing a denial of access to public records. Specifically,

> [a] person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record.

I.C. § 5-14-3-9(e) (2006).[2] The Act's definition of "public agency" includes, among other entities, "[a]ny law enforcement agency, which means an agency or a department of

---

[2] Because Lane-El filed his complaint in 2006, we will evaluate his claim under the version of the APRA effective in 2006.

any level of government that engages in the investigation, apprehension, arrest, or prosecution of alleged criminal offenders . . . ." I.C. § 5-14-3-2(l)(6) (2006).[3]

Neither party argues that the IPD does not qualify as a law enforcement agency. As such, the IPD fits the APRA's definition of a "public agency." Because the Act specifically provides that the proper procedure for challenging a public agency's, such as the IPD's, denial of a person's right to access public records is to file an action against that agency, we conclude that the Legislature has granted the capacity to sue the IPD under the APRA. Therefore, the trial court erred in determining that the IPD was not a suable entity and, therefore, not a proper party for Lane-El's suit.

B. *Chief Spears*

Next, we turn to the issue of whether Chief Spears was a proper party. The trial court concluded that Chief Spears was immune from suit under the ITCA, which is codified at INDIANA CODE §§ 34-13-3-0.1–34-13-3-25 (2006) and immunizes public employees against certain tort claims. Among other provisions, the ITCA provides that:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from[:] . . .
>> (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

---

[3] Notably, the definition of public agency also includes any "county, township, school corporation, city, or town, or any board, commission, department, division, bureau, committee, office, instrumentality, or authority of any county, township, school corporation, city or town." I.C. § 5-14-3-2(l)(6) (2006). As a department of the City of Indianapolis, the IPD qualifies as a public agency under this subdivision of the definition, also.

9

I.C. § 34-13-3-3 (2006). Accordingly, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." I.C. § 34-13-3-5(b) (2006).

However, "[t]he mere fact of government employment does not by itself mean that ITCA applies to an employee." *Waldrip v. Waldrip*, 976 N.E.2d 102, 115 (Ind. Ct. App. 2012). The ITCA applies only to claims or suits in tort. I.C. § 34-13-3-1. Neither party here has argued that Lane-El's claim is a tort claim, and we do not find support for the proposition that a violation of the APRA is a tort under Indiana law. His claim is not that he has suffered a "loss" as provided in section 34-13-3-3(8) of the ITCA; his action was merely to compel the production of records. As we noted recently in *Hoagland v. Franklin Twp. Cmty. School Corp.*, No. 49A02-1301-PL-44, 2014 WL 2580663, at *4 (Ind. Ct. App. June 10, 2014), the ITCA defines the type of "loss" it contemplates as "injury to or death of a person or damage to property or to the environment." *See also* I.C. § 34-6-2-75 (2006). Because Lane-El's complaint does not allege this kind of loss and because we do not otherwise find support for the proposition that Lane-El's claim is in tort, we conclude that the trial court erred in determining that the ITCA barred suit against Chief Spears.

Nevertheless, we do not find that Chief Spears is a proper party to Lane-El's suit. As stated above, the APRA establishes the statutory procedure for challenging a denial of a request to produce public records, and it does not authorize an action to compel records against an individual. Instead, the Act emphasizes that the *public agency* that has denied a public records access request is the proper party for an action. It provides that:

10

> A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the *public agency* to permit the person to inspect and copy the public record.

I.C. § 5-14-3-9(e) (2006). Likewise, the burden of proof is on the "public agency" to sustain its denial. I.C. § 5-14-3-9(f) (2006). Based on these provisions, it is clear that a public agency that has denied access to public records is the proper party to a suit to compel those records. The definition of public agency does not include individual employees of public agencies.[4] *See* I.C. § 5-14-3-2(l) (2006). Accordingly, we conclude that Chief Spears was not a proper party to Lane-El's suit.

2. Exemption of Requested Documents

Next, Lane-El claims that the trial court abused its discretion in granting the IPD's cross-motion for summary judgment. The trial court determined that the public records Lane-El requested were "investigatory records" that were exempt from the APRA at the IPD's discretion. Lane-El disputes this conclusion in two respects. First, he argues that the IPD did not follow the proper procedure for denying his request because its response was untimely and because Davis's letter denying the majority of his request was

_____

[4] Although the definition mentions "prosecuting attorneys, members of the excise police division of the alcohol and tobacco commission, conservation officers of the department of natural resources, gaming agents of the Indiana gaming commission, and the security division of the state lottery commission," it is clear within context that the definition includes these entities in their collective form—e.g., the members of the excise police division collectively as a division, rather than individually in their capacities as employees. *See* I.C. § 5-14-3-2(l) (2006).

11

unsworn. Second, he also argues that the IPD did not fulfill its burden of proving that the records qualified as "investigatory records" that were exempt from the APRA.[5]

When we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). The moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* If the moving party carries the burden, the nonmoving party must present evidence establishing the existence of a genuine issue of material fact. *Id.* In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designate to the trial court. Ind. Trial Rule 56(C), (H). We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party. *Reed*, 980 N.E.2d at 285. The fact that the parties have filed cross-motions for summary judgment does not alter our standard of review. *Id.* We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

The APRA provides that "[a]ny person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in section 4 of this chapter."[6] I.C. § 5-14-3-3 (2006). Section 4, in turn, exempts certain

---

[5] Lane-El also makes an argument under the United States Freedom of Information Act ("FOIA") that we will not address as it is well-established that the FOIA applies only to the actions of federal agencies. *See, e.g., St. Michael's Convalescent Hospital v. State of Cal.*, 643 F.2d 1369, 1373 (9th Cir. 1981).

[6] A "public record" is defined as "any writing, paper, report, study, map, photograph, book, card, tape recording, or other material that is created, received, retained, maintained, or filed by or with a public agency and which is generated on paper, paper substitutes, photographic media, chemically based media,

12

public records from the APRA's disclosure requirements; 4(a) delineates records that "may *not* be disclosed," and 4(b) delineates records that an agency *may* disclose at its "discretion." I.C. § 5-14-3-4 (emphasis added). The latter category encompasses the "[i]nvestigatory records of law enforcement agencies." I.C. § 5-14-3-4(b)(1) (2006).

When a public agency denies a request for the production of public records, the person denied access to the records may file an action to compel the production of the documents in the circuit or superior court of the county in which the denial occurred. I.C. § 5-14-3-9(e) (2006). In determining whether the record is exempt from disclosure, the court uses a de novo standard of review, and the burden of proof is on the public agency to sustain its denial. I.C. § 5-14-3-9(f) (2006). The agency meets its burden of proof by: (1) proving that the record falls within a category exempted by section 4(b); and (2) "establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit[.]" I.C. § 5-14-3-9(g)(1) (2006). The person requesting access to the public record meets his or her burden of proof by "proving that the denial of access [was] arbitrary or capricious." I.C. § 5-14-3-9(g)(2) (2006). An agency's action is arbitrary and capricious if it is "without consideration or [is] in disregard of the facts and circumstances of the case, and it must be without some basis which would lead reasonable and honest people to the same conclusion." *Heltzel v. Thomas*, 516 N.E.2d 103, 106 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*.

A. *Procedure*

_____

magnetic or machine readable media, electronically stored data, or any other material, regardless of form or characteristics." I.C. § 5-14-3-2(m) (2006).

Lane-El first raises procedural arguments that the trial court abused its discretion in granting the Defendants' motion for cross-summary judgment because the Defendants' exemption claim was "improperly belated" and because the trial court improperly considered Toppen's unsworn letter. (Lane-El's Br. 18). With respect to the timeliness of the IPD's exemption claim, INDIANA CODE § 5-14-3-9 (2006) provides that:

> . . . if a request initially is made in writing or by facsimile, a public agency may deny the request if:
>     (1) The denial is in writing or by facsimile; and
>     (2) The denial includes:
>         (A) a statement of the specific exemption or exemptions authorizing withholding of all or part of the public record; and
>         (B) the name and the title or position of the person responsible for the denial.

Regardless of whether Lane-El's argument has merit, however, in 2006 the APRA did not provide a statutory remedy for such procedural failures, and Lane-El has not directed us to any cases specifying a remedy, statutory or otherwise. The Legislature has since addressed this omission under the APRA by providing that public agencies and individual public agency employees that improperly withhold records may receive civil penalties. *See* I.C. § 5-14-3-9.5 (2014). This provision did not exist in 2006, though, and even this language does not allow us to compel the disclosure of the public records Lane-El seeks.

We agree with Lane-El that the IPD did not follow the proper procedure to raise an exemption claim because this section clearly provides that an agency should provide a written denial to a public records request that specifies the exemption claim in the denial. The IPD never responded to Lane-El, in writing or otherwise, and did not raise its

14

exemption claim until its cross-motion for summary judgment. However, while we recognize that this was a failing of the 2006 APRA, we also acknowledge that it would not be appropriate for us to compel the disclosure of investigatory records based on a mere procedural error when the Legislature has explicitly chosen to exempt investigatory records from the Act.

The 2006 APRA does provide one remedy for a person who has been denied access to public records—in this case a de facto denial, if not a proper denial—that person may initiate judicial action to compel the public agency to produce the records. Lane-El followed this procedure, and the IPD raised its exemption claim in response to Lane-El's complaint. The IPD also produced one record that it conceded was not exempt. In light of this eventual, if belated, compliance with the Act and the Act's lack of remedy for the IPD's prior non-compliance, we conclude that the timeliness of the IPD's exemption claim is not dispositive of Lane-El's claim.

The remaining procedural question we must address is whether the IPD's eventual compliance, through Toppen's response to Lane-El's request, was improper designated evidence to support the Defendants' motion for cross-summary judgment because it was unsworn. Trial Rule 56 requires each party to a summary judgment motion to "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." T.R. 56(C). The opposing party then must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." T.R. 56(C). In ruling on a motion for summary judgment,

15

the trial court should only consider properly designated evidence that would be admissible at trial. *Kronmiller v. Wangberg*, 665 N.E.2d 624, 627 (Ind. Ct. App. 1996), *trans. denied.*

Lane-El argues that because Toppen's letter was unsworn, it would have been inadmissible at trial, and the trial court therefore should not have considered it when ruling on the motion for summary judgment. We disagree. As the trial court ruled, Toppen's letter was a self-authenticating domestic public document admissible under Indiana Rule of Evidence 902(1). A self-authenticating document requires no extrinsic evidence of authenticity, such as a sworn statement, in order to be admitted. Evid. R. 902; *see also Dumes v. State*, 723 N.E.2d 460, 463 (Ind. Ct. App. 2000). Rule 902(1) provides that domestic public documents that are sealed and signed are self-authenticating. These are documents that bear: (1) "[a] seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular area of the United States; a political subdivision of any of these entities; or a department, agency or officer of any entity . . ."; and (2) "a signature purporting to be an execution or attestation." Evid. R. 902(1). Toppen's letter met these qualifications because it bore the seal of the City of Indianapolis and was signed by Toppen, the Public Access Counselor.

Further, we agree with the trial court that the letter would have been admissible at trial because it was not hearsay. Hearsay is an out-of-court statement that "is offered in evidence to prove the truth of the matter asserted." Evid. Rule 801. Under Indiana Rule of Evidence 802, hearsay is not generally admissible. However, evidence of "verbal conduct to which the law attaches duties and liabilities" is not hearsay as long as the

16

evidence "is being offered not for its truth but for its independent legal significance." *Consolidated Rail Corp. v. Thomas*, 463 N.E.2d 315, 320 (Ind. Ct. App. 1984).

The trial court found that the letter was evidence of verbal conduct because it was offered to show that the IPD responded to Lane-El's public records request, rather than as proof of the matter asserted. We agree with this conclusion. The contents of Toppen's letter were not necessary to fulfill the IPD's burden of proving that the public records were investigatory records. The matter asserted in the letter is only relevant as proof of the IPD's reasons for denying Lane-El's request, which are relevant for purposes of Lane-El's burden of showing that the IPD's decision was arbitrary or capricious. *See* I.C. § 5-14-3-9(g)(2) (2006) (specifying that the person requesting access to a public record meets his or her burden of proof by "proving that the denial of access [was] arbitrary or capricious"). As the truth of the letter is relevant for Lane-El's burden of proof but not the IPD's, we conclude that the IPD did not offer the letter as proof of the matter it asserted, and that the letter was, therefore, not hearsay. Likewise, because we conclude that the letter was self-authenticating and was not hearsay, we also conclude that it would have been admissible at trial and was properly designated for purposes of the cross-motions for summary judgment.

B. *Investigatory Records*

Next, we turn to whether the records Lane-El requested were exempt from disclosure under the APRA as investigatory records. As stated above, although the APRA generally provides that anyone may inspect and copy the public records of any public agency, section 4 of the APRA exempts "investigatory records" from this

disclosure requirement at the discretion of the agency holding the record. *See* I.C. §§ 5-14-3-3, -4 (2006). The Act defines "investigatory record" as "information compiled in the course of the investigation of a crime." I.C. § 14-3-2(h) (2006). The IPD argues that the records Lane-El requested were compiled by the IPD during its investigation of Lane-El's 1992 criminal case and, therefore, meet the definition of investigatory records. By extension, the IPD argues that because the records are investigatory, the agency had the discretion to withhold them from disclosure. In response, Lane-El argues that "the requested *aging twenty-one year old records* are not the type of public record [that] would automatically fall into the category of 'information compiled in the course of the investigation of a crime.'" (Lane-El's Br. 18) (emphasis in original). In order for the trial court to properly grant the IPD's cross-motion for summary judgment, the IPD had to fulfill its burden of proving that the records were exempt under the statute. I.C. § 5-14-3-9(f) (2006); *Reed*, 980 N.E.2d at 285.

We have not frequently interpreted the term "investigatory record." However, we have held that although we are required to construe exceptions to public disclosure laws strictly, that does not mean that we will contravene expressed exceptions specified by the Legislature. *Journal Gazette v. Bd. of Trustees of Purdue Univ.*, 698 N.E.2d 826, 828 (Ind. Ct. App. 1998). We have interpreted the definition "information compiled in the course of the investigation of a crime" broadly to include records of autopsies, even when the autopsy results in a finding that a crime has not occurred. *See Althaus v. Evansville Courier Co.*, 615 N.E.2d 441 (Ind. Ct. App. 1993) (holding that if a coroner can satisfy one of the conditions of the autopsy statute, that is sufficient to satisfy the coroner's

18

burden of proving that records are investigatory), *reh'g denied*; *see also Heltzel v. Thomas*, 516 N.E.2d 103 (1987) (citing reasons for considering a coroner's investigations investigatory records, including the fact that the record may contain "a narrative of the coroner's observations, which may also include the impressions of law enforcement personnel present who are required to assist the coroner" and that "at the time of a death investigation by the coroner, it is often difficult to determine whether that particular case will be the subject of a criminal prosecution"), *trans. denied.* Contrarily, we have held that a subpoena is not the type of public record which would automatically fall into the category of "information compiled in the course of the investigation of a crime." *Evansville Courier v. Prosecutor, Vandeburgh Cnty.*, 499 N.E.2d 286, 288 (Ind. Ct. App. 1986), *reh'g denied, trans. denied.*

Here, the IPD argued that Lane-El's requested records were investigatory because they were compiled by IPD during the investigation of Lane-El's 1992 case, which resulted in his later conviction for a sex crime. The plain language of the requests support this assertion. In request numbers 1, 7, 8, 9, 10, 11, 12, and 13, Lane-El specifically cites the case numbers for the investigation, inherently conceding that the records were compiled in the course of a criminal investigation. Then, in requests 2 and 3, he asks for voluntary statements taken of the confidential informant and himself on the day of the incident and the following day. In request 4 he uses the phrase "with regard to the sexual assault or resulting investigation." (App. 193). In requests 5 and 6, he seeks information regarding the confidential informant to the investigation. In request 8, he asks for photographs taken at the scene of the offense, and in requests 9-13, he seeks

19

access to the notes, reports, and communications that the detectives on the investigation and the crime lab completed concerning the offense. Based on the IPD's assertions that these records were compiled during its investigation of Lane-El's offense and the plain language of the requests, we conclude that the IPD fulfilled its burden of proving that the records were investigatory records and that the burden of proof shifted to Lane-El to demonstrate that they were not investigatory records.

In response to the IPD, Lane-El seems to imply that the records do not qualify as investigatory records due to their age. However, we explicitly rejected an argument in favor of disclosing older records based on age in *Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trustees of Ind. Univ.*, 787 N.E.2d 893, 902 (Ind. Ct. App. 2003) (disagreeing that there was no need to protect "yellowing documents contained in long-closed files."), *trans. denied*. As we noted in that case, the APRA contains a separate provision for the disclosure of aging documents, which allows disclosure seventy-five (75) years after the creation of the record, but not before. *Id.*; *see* I.C. § 5-14-3-4(d). Although Lane-El's requested public records are dated, they are only twenty-two years old and do not qualify as aging documents.

Lane-El also seems to argue that we should only consider records exempt as investigatory records if their disclosure will interfere with active law enforcement proceedings. In support of this proposition, he cites to cases interpreting the Freedom of Information Act, which is not applicable here. *See St. Michael's Convalescent Hospital*, 643 F.2d at 1373. The FOIA only applies to federal agencies and also contains a different definition of investigatory records. *Id.* In contrast, the APRA does not limit the

20

definition of investigatory records to those that will interfere with active law enforcement proceedings. *See* I.C. § 14-3-2(h) (2006). Although the IPD is not investigating Lane-El's offense "at this particular time and era," as Lane-El argues, (Lane-El's Br. 20), the IPD compiled the records "in the course of" investigating the crime. I.C. § 14-3-2(h) (2006). We will not contravene the Legislature's intent in creating an explicit exception to the APRA by limiting investigatory records to records of active investigations.

Finally, Lane-El argues that the records "are not the type of public record[s] [that] would automatically fall into the category of 'information compiled in the course of the investigation of a crime.'" (Lane-El's Br. 18). However, he does not provide any justification for this point, and we do not find it persuasive.

Because we find that the IPD met its burden of proving that Lane-El's requested records qualified as investigatory records, and we do not find Lane-El's arguments to the contrary persuasive, we conclude that under the statute the IPD had the discretion to deny Lane-El's request. Further, Lane-El has not made any arguments that the IPD was arbitrary or capricious in exercising this discretion, as required to compel production of the records. Accordingly, we conclude that there were no genuine issues of material fact left to decide, and the trial court did not abuse its discretion in granting the Defendants' cross-motion for summary judgment.

3. In Camera Review

In its order, the trial court also denied Lane-El's motion for in camera review of his requested records. On appeal, Lane-El argues that the trial court should have

reviewed the records in order to ensure that the IPD was accurately describing them as investigatory records.[7]

Trial courts have broad discretion in ruling on discovery matters, and we will affirm their determinations absent a showing of clear error and resulting prejudice. *Wilkes v. State*, 984 N.E.2d 1236, 1251 (Ind. 2013), *reh'g denied*, *cert. denied*. The APRA also grants trial courts discretion in whether or not to conduct an in camera review of requested documents. INDIANA CODE § 5-14-3-9(h) provides that "[t]he court *may* review the public record in camera to determine whether any part of it may be withheld under this chapter." (Emphasis added). We have previously held that "[t]he term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion." *Romine v. Gagle*, 782 N.E.2d 369, 380 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.*

As we stated above, the plain language of Lane-El's requests indicated that he was seeking investigatory records. In light of this factor and the IPD's verification that the records related to the investigation of Lane-El's sex crime, we find that it was unnecessary for the trial court to review the records in camera in order to determine their nature. Accordingly, we conclude that the trial court did not commit clear error in denying Lane-El's motion for in camera review.

Affirmed in part, reversed in part.

MATHIAS, J., and BRADFORD, J., concur.

---

[7] In support of his argument, Lane-El again cites cases interpreting the FOIA, which we will not address as they are not applicable here. *See, e.g., St. Michael's Convalescent Hospital*, 643 F.2d at 1373.