

FILED

Apr 17 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

April L. Edwards
Boonville, Indiana

ATTORNEY FOR APPELLEE

Craig M. McKee
Wilkinson, Goeller, Modesitt
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Todd Scales,

*Appellant-Plaintiff,*

v.

Warrick County Sheriff's
Department,

*Appellee-Defendant*

April 17, 2019

Court of Appeals Case No.
18A-MI-1590

Appeal from the Warrick Superior
Court

The Honorable J. Zach Winsett,
Judge

Trial Court Cause No.
87D01-1709-MI-1498

**Baker, Judge.**

Kenneth Scales filed a petition for access to public records, seeking documents from the Warrick County Sheriff's Department (the Department) related to the disappearance and death of his daughter, Kristy Kelley. The Department moved for summary judgment, arguing that the records to which Scales sought access were investigatory records that the Department could withhold at its discretion. The trial court ruled in favor of the Department, and Scales now appeals. Finding that the documents are not investigatory records as described by our General Assembly, and consequently, that they may not be withheld from public disclosure at the Department's discretion, we reverse and remand with instructions.

# Facts[1]

The following represents the publicly known facts accumulated by the Department in its missing person's investigation.

On or about August 15, 2014, Kelley went missing. Kelley lived with her parents and two children in Boonville and worked at the local CVS. Three years before her disappearance, Kelley had divorced her daughter's father, Clay Kelley, because of finances and Clay's alleged drinking problem. Clay's father worked as a deputy for the Department, and Scales worked as a jailer for the

---

[1] We held oral argument in this case at the University of Southern Indiana in Evansville on April 8, 2019. We thank both parties for their stimulating discussion, and we thank the University of Southern Indiana, its faculty, and its students for their warm and generous hospitality.

Department. A few weeks before Kelley's disappearance, Clay vandalized Kelley's car and called her a bad mother. The two frequently argued, usually via text message. One text message that Kelley sent to Clay on August 9, 2014, shortly before her disappearance, said that "you would probably kill me and hide my body." Appellant's App. Vol III p. 36.

[4] The night before she disappeared, Kelley went out to dinner with friends. At around 11 p.m., Kelley went to the VFW in Boonville because her friend, Terra Ellis, was bartending. When the bar started closing procedures, Kelley went to use the restroom and then left the VFW. Dennis Hill, the bar janitor, was present at the facility and was the last person who saw Kelley. At 3:30 a.m., Hill found Kelley's cell phone in the restroom. The last text message Kelley sent was time-stamped at 1:38 a.m. The police later interviewed Clay, who admitted that he and Kelley had been arguing over her current boyfriend just before she went missing. The police reviewed Kelley's phone for her last text messages, which revealed that Clay had been trying to meet with Kelley that night, but Kelley did not want to. Those very text messages had been deleted from Clay's phone. Surveillance video footage from a nearby restaurant shows a vehicle that appears to be Kelley's driving westward.

[5] The next day, after Kelley did not report to work, Scales became concerned and contacted the police. Local law enforcement opened a missing person's investigation. Shortly thereafter, the FBI, the Indiana State Police, and the Boonville Police Department became involved. Additionally, Scales requested that a sonar search group assist with the search at different locales. At all times,

law enforcement referred to and classified Kelley's case as a missing person's investigation and not as a criminal investigation. The agencies worked together to acquire evidence, conduct interviews with potential witnesses, and gather documents. Sheriff Brett Kruse represented the Department throughout the entirety of the investigation. No criminal charges were ever filed.

[6] More than one month later, on September 16, 2014, law enforcement discovered Kelley's vehicle at the bottom of a lake, with her body in the backseat. The vehicle had significant damage to the front end, the keys were found on Kelley's person and not in the ignition, and there were no signs of foul play. Less than twenty-four hours after Kelley's body was found, the coroner issued a report declaring that Kelley's death was the result of accidental asphyxiation caused by drowning. The Department closed its investigation.

[7] On September 26, 2017, Scales filed a petition for access to records pursuant to the Indiana Access to Public Records Act (APRA). Specifically, Scales sought information related to the missing person's investigation surrounding Kelley's disappearance, discovery, and accidental death. Additionally, on October 11, 2017, Scales served a subpoena duces tecum on the Department, requesting the following information:

> 1. A copy of the video surveillance footage evidencing Kristy Kelley's vehicle after leaving the VFW on August 15, 2014.
>
> 2. Copies of any and all police reports, and supplements generated in the investigation of the missing person case involving Kristy Kelley, including any reports generated after she was subsequently

located on September 16, 2014.

2. [sic] Copies of any and all interview statements.

3. Copies of all evidence logs.

4. Copies of any and all documents received by you from either the Indiana State Police and/or the FBI with respect to their investigation conducted on or after August 15, 2014.

5. Copies of all evidence generated during the investigation of the disappearance of Kristy Kelley and investigation of her death.

Appellant's App. Vol. II p. 16.

[8] On November 8, 2017, Sheriff Kruse responded to the petition for access to records and the subpoena duces tecum with the following affidavit:

> 1. My name is Brett Kruse. I am the duly elected Sheriff of Warrick County, Indiana, and I have served in that capacity since January 1, 2011.
>
> 2. In my capacity as Sheriff, I have received public records requests from Kenneth Scales (or representatives on his behalf) for access to certain law enforcement investigatory records generated and retained by my office following the disappearance of his daughter, Kristyn Kelley, on or about August 15, 2014. I have declined to provide those records to the requestor based on Indiana's Public Records Act that grants to a law enforcement agency discretion whether to release such records.
>
> 3. Although Indiana's law does not require an explanation of a Sheriff's exercise of discretion, I state for this record that I have declined the request for the following reasons:
>
>> a) I believe the investigative records contain personal information of individuals who were interviewed or who provided information in connection with the investigation of Ms. Kelley's disappearance and disclosure of their identity and/or personal information will subject them to

additional investigation, interview or harassment as part of a privately funded and redundant investigation;

b)     I consulted with the Prosecutor during the course of the investigation and it ultimately was determined in 2014 that there was insufficient evidence produced by the investigation to charge any individual with a crime;

c)     I believe the reports included extraneous material, including the mental impressions or notes of investigating officers, and material gathered that ultimately was irrelevant to the investigation.

4.     I respectfully decline to produce such records voluntarily because I believe to do so violates my responsibility as Sheriff.

*Id.* at 18.

[9]    Additionally, on November 13, 2017, the Department filed a motion to quash the subpoena duces tecum and a motion to dismiss the cause of action for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6). On January 19, 2018, Scales responded by opposing the Department's motions to dismiss and to quash and by filing a motion to strike Sheriff Kruse's affidavit from the record. On the same date, Scales moved for the trial court to preserve the contents of the Department's file on Kelley and to conduct an in camera review of the materials to which he sought access.

[10]    After conducting a hearing on March 9, 2018, for all pending motions, the trial court ordered the Department to preserve all materials related to the investigation into Kelley's disappearance, granted the Department's motion to quash the subpoena duces tecum, denied Scales's motion to conduct an in

camera review of the materials, denied Scales's motion to strike Sheriff Kruse's affidavit, and took the Department's motion to dismiss under advisement.

On April 6, 2018, the trial court issued an order holding that the Department's motion to dismiss would be treated as a motion for summary judgment since an item outside the pleadings—Sheriff Kruse's affidavit—had been submitted for consideration. Both parties filed their respective briefs and evidence for the summary judgment proceedings. In sum, the Department, in line with statements made by Sheriff Kruse in his affidavit, argued that the records Scales sought were investigatory records that, under the APRA, the Department had the discretion to withhold from public disclosure. Scales argued that because there was never a criminal investigation, the Department could not use the APRA's investigatory records exception to withhold Kelley's files from public disclosure. On June 13, 2018, the trial court granted the Department's motion for summary judgment. Scales now appeals.

# Discussion and Decision

Scales raises multiple arguments, which we consolidate and restate as whether the trial court erred when it granted the Department's motion for summary judgment.[2]

---

[2] Scales also raises two separate arguments, including that the trial court erred when it granted the Department's motion to dismiss and when it quashed his subpoena duces tecum. We decline to address the dismissal argument because the trial court properly converted the motion to dismiss into a motion for summary judgment after matters outside the pleadings were presented for review. *See generally* Ind. Trial Rule

# I. Standard of Review

Our standard of review for a motion for summary judgment is well settled:

> [W]hen we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. The moving party must show there are no genuine issues of material fact and it is entitled to judgment as a matter of law. If the moving party carries its burden, then the non-moving party must present evidence establishing the existence of a genuine issue of material fact. In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party.

*Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015) (internal citations and quotations omitted).

# II. Access to Public Records Act

The APRA ensures that Indiana citizens have access to the "full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." Ind. Code § 5-14-3-1. And when someone requests records pursuant to the APRA, it shall be "liberally construed to implement this policy and place the burden of proof for

12(B). We also decline to address the quashing argument because the subpoena duces tecum essentially functioned as another petition to access public records, the core issue of the summary judgment motion. As such, analyzing the legal merits of the subpoena duces tecum claim would be redundant.

the nondisclosure of a public record on the agency that would deny access to the record and not on the person seeking to inspect and copy the record." *Id.* Scales is the person requesting records related to his daughter's disappearance, and the Department is the public agency denying access. *See* I.C. § 5-14-3-2(q)(6) (defining a public agency as "[a]ny law enforcement agency, which means . . . the police or sheriff's department of a political subdivision[]").

While the general rule is that government documents are open to public access, there are exceptions. The exception relevant to this case is found in section 5-14-3-4(b):

> (b) Except as otherwise provided by subsection (a), the following public records shall be excepted from section 3 of this chapter *at the discretion of a public agency*:
>
>> (1) Investigatory records of law enforcement agencies or private university police departments. . . .

(Emphasis added). Therefore, if a member of the public requests access to the investigatory records of a law enforcement agency, the agency has discretion to grant or deny that request.

We consider the following when reviewing a denial of access to public records:

> In determining whether the record is exempt from disclosure, the court uses a de novo standard of review, and the burden of proof is on the public agency to sustain its denial. The agency meets its burden of proof by: (1) proving that the record falls within a category exempted by section 4(b); and (2) establishing the content of the record with adequate specificity and not by relying on a conclusory statement or affidavit[.]

*Lane-El v. Spears*, 13 N.E.3d 859, 868 (Ind. Ct. App. 2014) (internal citations and quotations omitted).

# III. Investigatory Records

Scales argues that the Department has not proved that the records he sought fell under the investigatory records exception.

The APRA defines investigatory records as "information compiled in the course of the investigation of a crime." I.C. § 5-14-3-2(i). The rules of statutory interpretation mandate that we assign words their plain and ordinary meaning unless the statute provides specific definitions. *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind. Ct. App. 2007). Here, the APRA's definition of investigatory records preempts any plain and ordinary meaning of the word "investigatory." The documents in contention must have been accumulated in the course of the investigation of a crime. If there is no criminal investigation, the documents cannot be withheld at the police or sheriff's department's discretion pursuant to the investigatory records exception.

In this instance, there was no criminal investigation, and the Department conceded to this fact numerous times. The record shows that at all times, law enforcement from the FBI, the Indiana State Police, and the Boonville Police Department referred to and classified Kelley's case as a missing person's investigation. No criminal indictments or informations were ever issued in the case, and Sheriff Kruse, in his role as representative of the Department, even

concluded that "I consulted with the Prosecutor during the course of the investigation and it was ultimately determined in 2014 that there was insufficient evidence produced by the investigation to charge any individual with a crime[.]" Appellant's App. Vol. II p. 18. The fact that the coroner's office declared Kelley's death an accidental death just twenty-four hours after her corpse was discovered reinforces the fact that there was no criminal investigation. Therefore, we can only conclude that the Department did not have the statutory authority to withhold Kelley's file pursuant to the investigatory records exception.

[20] The Department relies on three cases in which we held that the investigatory records exception applies to demonstrate that it should be accorded even broader discretion to withhold the requested documents: *Heltzel v. Thomas*, 516 N.E.2d 103 (Ind. Ct. App. 1987); *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441 (Ind. Ct. App. 1993); and *Lane-El v. Spears*, 13 N.E.3d 859 (Ind. Ct. App. 2014). However, one key fact distinguishes Kelley's case from these cases. In *Heltzel*, the investigative reporter was seeking documents about the condition and location of a body that *may* have been part of a criminal investigation. In *Althaus*, a newspaper was denied access to records about a police officer's suicide even though it was unclear whether there was a criminal investigation after the coroner's office issued its report. And in *Lane-El*, the defendant, a convicted sex offender, was denied access to records surrounding the investigation into his crimes because the documents were clearly compiled in the course of a criminal investigation. In other words, unlike these three cases

where there may have been or there was a criminal investigation, Kelley's case was decisively not a criminal investigation.

[21] The facts of this case do not neatly fit within the investigatory records exception analyses laid out by this Court in those three cases. The APRA provides a precise definition of investigatory records. The Department and all law enforcement personnel connected with Kelley's missing person's investigation clearly stated that this was not a criminal investigation, and the coroner's office's report resolutely determined that there were no criminal circumstances surrounding Kelley's accidental death after just twenty-four hours. Thus, the documents related to her disappearance and death are not investigatory records as defined by our General Assembly.

[22] Accordingly, our inquiry ends there. Because the Department has failed to meet its burden to show that the documents Scales sought fell under the APRA's investigatory records exception, its invocation of this exception fails as a matter of law. We reverse the trial court's order and remand with instructions to enter judgment in Scales's favor.

[23] The judgment of the trial court is reversed and remanded with instructions.

May, J., and Brown, J., concur.