**FILED**

Apr 29 2020, 10:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS – INDIANA
PROSECUTING ATTORNEYS
COUNCIL

Christopher W. Naylor
Executive Director

J. Thomas Parker
Deputy Director
Indiana Prosecuting Attorneys Council

ATTORNEYS FOR AMICUS – STATE
OF INDIANA

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Margaret M. Christensen
Mark R. Molter
Dentons Bingham Greenebaum
LLP
Indianapolis, Indiana

ATTORNEY FOR AMICI –
REPORTER'S COMMITTEE
FOR FREEDOM OF THE
PRESS, ET AL.

Michael A. Wilkins
Broyles Kight & Ricafort
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| Carroll County E911,<br>*Appellant-Defendant,*<br><br>v.<br><br>Aishah Hasnie,<br>*Appellee-Plaintiff.* | April 29, 2020<br><br>Court of Appeals Case No.<br>19A-MI-2682<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Timothy W.<br>Oakes, Judge<br><br>Trial Court Cause No.<br>49D02-1802-MI-7041 |
| --- | --- |

**Najam, Judge.**

# Statement of the Case

Carroll County E911—the 9-1-1 call and dispatch center for Carroll County ("the Dispatch Center")—appeals the trial court's entry of summary judgment for Tribune Broadcasting Indianapolis, LLC, d/b/a Fox 59 ("Fox 59"), on Fox 59's complaint seeking disclosure of certain 9-1-1 calls pursuant to Indiana's Access to Public Records Act, Ind. Code §§ 5-14-3-1 to -10 (2019) ("APRA"). The Dispatch Center raises the following two issues for our review:

> 1.      Whether the 9-1-1 calls in question were records that may be excepted from public disclosure under APRA.

2. Whether the trial court abused its discretion when it permitted Fox 59 to substitute itself for an employee as the real party in interest in this matter after the employee had left her employment with Fox 59.

[2] The 9-1-1 calls at issue here were originally received and recorded by the Dispatch Center but, thereafter, acquired by local law enforcement agencies pursuant to a criminal investigation. Those agencies asked the Dispatch Center not to honor Fox 59's APRA request because public disclosure of the calls could compromise their investigation. APRA allows for otherwise public records to be withheld from public disclosure when those records are the investigatory records of law enforcement agencies. Accordingly, we hold that, pursuant to that exception, Fox 59 is not entitled to summary judgment against the Dispatch Center. We therefore reverse the trial court's entry of summary judgment for Fox 59 on the APRA issue. However, we affirm the trial court's substitution of Fox 59 as the real party in interest.

## Facts and Procedural History

[3] The Dispatch Center "is a public safety answering and dispatch point for police, fire, emergency medical[,] and emergency management service" for Carroll County. Appellant's App. Vol. III at 6. Its mission is to "serve as the communications link between the citizen and public safety agencies; make accurate identification of the citizen's location and public safety response needs; quickly and accurately activate public safety services; [and] provide communications support and coordination of all public safety and supporting agencies." *Id.* The Dispatch Center's Lead Communicator manages the

Dispatch Center and its employees and is required to inform the Carroll County Commissioners' Office of any employee discipline within the Dispatch Center. *Id.* at 42.

[4] In November of 2016, four children died in a residential house fire in Flora, which is in Carroll County. Multiple 9-1-1 callers reported the fire to the Dispatch Center, which recorded the calls ("the 9-1-1 calls"). Indiana State Police Detective Benjamin Rector was part of the team that then investigated the fire, which became a criminal investigation that remains ongoing. He would later describe the 9-1-1 calls as follows:

> 7. The [9-1-1 calls] capture details regarding the fire relevant to the law enforcement investigation.
>
> 8. The public release of [the 9-1-1 calls] would harm the investigation.
>
> 9. This is because the recordings contain details about the fire not publicly known, including who witnessed the fire, what they reported about what they saw, when they witnessed it, the witnesses' awareness[es] of who occupied the home where the fire occurred, and conversations occurring in the background of the calls.
>
> 10. Allowing these details to become publicly known would undermine the ongoing investigation because these details take significance when investigators interview witnesses and potential suspects.
>
> 11. If the details recorded in the [9-1-1 calls] became publicly known, potential suspects and witnesses could use this

information to evade questioning and it would limit investigators['] ability to know what information suspects have first-hand knowledge of and which information witnesses learned through public disclosure of evidentiary material like [the 9-1-1 calls].

12.    Because the investigation is ongoing, investigators cannot know all details in the recordings that may be of importance as the investigation continues.  Releasing the records at this time may disclose facts of significance that potential suspects could use in attempting to evade prosecution.

13.    Gathering [9-1-1] recordings is a common investigative technique in homicide and other major investigations.  I have on several earlier occasions preserved [9-1-1] recordings that were later used as evidence in criminal prosecutions.

Appellant's App. Vol. IV at 57.

[5]    In June of 2017, Aishah Hasnie, then a news reporter for Fox 59, requested that the Dispatch Center release the 9-1-1 calls to her under APRA.  The Dispatch Center declined, stating that, because "the fire is still under police investigation" by the Carroll County Sheriff's Department and the Carroll County Prosecutor, those agencies were "exercising their discretion not to permit disclosure of such recording or recordings at this time, pursuant to [Indiana Code Section] 5-14-3-4(b)(1)."  Appellant's App. Vol. II at 15.

[6]    Hasnie requested that the Indiana Public Access Counselor (the "PAC") review her APRA request and the Dispatch Center's denial of her request.  The PAC opined that the Dispatch Center was required under APRA to disclose the 9-1-1

calls. However, the Dispatch Center disagreed and continued not to disclose the 9-1-1 calls. Hasnie then filed her complaint in the Marion Superior Court.

[7] In April of 2019, Fox 59 moved to substitute itself as the real party in interest for Hasnie, who had left her employment there, and also moved for summary judgment. The Dispatch Center objected to the substitution of parties and filed its response to the summary judgment motion. In its response, the Dispatch Center designated the affidavit of Detective Rector. The trial court granted Fox 59's motion to substitute itself for Hasnie. The court then entered summary judgment for Fox 59.[1] This appeal ensued.

## Discussion and Decision

### *Issue One: Whether the Dispatch Center Lawfully Withheld the 9-1-1 Calls from Public Disclosure under APRA*

[8] We first address the Dispatch Center's appeal from the trial court's entry of summary judgment for Fox 59 on the APRA request. Our standard of review is clear:

> We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A

---

[1] The court stayed its order for Fox 59 pending appeal.

fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[9] Whether the 9-1-1 calls here can be excepted from disclosure under APRA is a question of statutory interpretation. As the Indiana Supreme Court has stated:

[S]tatutory interpretation is a question of law that we review *de novo*. In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we apply words and phrases in their plain, ordinary, and usual sense. When a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. When faced with an ambiguous statute, our primary goal is to determine, give effect to, and implement

the intent of the Legislature with well-established rules of statutory construction. We examine the statute as a whole, reading its sections together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (cleaned up).

[10] APRA generally provides that "it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees." I.C. § 5-14-3-1. "Thus, in APRA our legislature declared that transparency in government is the public policy of the State of Indiana." *Groth v. Pence*, 67 N.E.3d 1104, 1108 (Ind. Ct. App. 2017), *trans. denied*.

[11] However, "the public's right of access to public records is also subject to well-recognized exceptions under APRA." *Id.* One of APRA's exceptions states that the following records are not subject to disclosure "at the discretion" of an agency: "Investigatory records of law enforcement agencies . . . ." I.C. § 5-14-3-4(b)(1). APRA defines an "[i]nvestigatory record" as "information compiled in the course of the investigation of a crime." I.C. § 5-14-3-2(i).

[12] As an initial matter, we cannot agree with the Dispatch Center's assertion on appeal that it is a law enforcement agency under APRA. APRA defines "[p]ublic agency" to include "[a]ny law enforcement agency, which means an agency or a department of any level of government that engages in the

investigation, apprehension, arrest, or prosecution of alleged criminal offenses . . . ." I.C. § 5-14-3-2(q)(6). The statute further lists the following examples of an APRA law enforcement agency: "the state police department, the police or sheriff's department of a political subdivision, prosecuting attorneys, members of the excise police . . . , conservation officers . . . , gaming agents . . . , gaming control officers . . . , and the security division of the state lottery commission." *Id.* The Dispatch Center has not designated any evidence that it is subject to the direction or control of any law enforcement agency. Indeed, the designated evidence suggests it operates under the ultimate control of the Carroll County Commissioners. And neither is the Dispatch Center engaged in the "investigation . . . of alleged criminal offenses" when it merely relays information from phone calls to relevant emergency personnel. The Dispatch Center is a call relay center, not a law enforcement agency.

[13] Nonetheless, we agree with the Dispatch Center that the exception for investigatory records of law enforcement agencies applies to the 9-1-1 calls here. The Carroll County Sheriff's Department and the Carroll County Prosecutor, which are law enforcement agencies under APRA, "compiled" the 9-1-1 calls in the course of their investigation of the suspected arson when they received copies of the calls from the Dispatch Center. As the Dispatch Center notes, the dictionary definition of "to compile" includes "to collect." Appellant's Br. at 16 (quoting Merriam-Webster's online dictionary).

[14] And our case law is clear that, at least when requested from a law enforcement agency directly, 9-1-1 calls can be excepted from disclosure under APRA. *Lane-*

*El v. Spears¸* 13 N.E.3d 859, 871-72 (Ind. Ct. App. 2014), *trans. denied*.  In *Lane-El*, a convicted child molester sought various police records underlying his conviction, including a 9-1-1 call, pursuant to APRA.  We stated as follows:

> We have not frequently interpreted the term "investigatory record."  However, we have held that although we are required to construe exceptions to public disclosure laws strictly, that does not mean that we will contravene expressed exceptions specified by the Legislature.  *Journal Gazette v. Bd. of Trustees of Purdue Univ.*, 698 N.E.2d 826, 828 (Ind. Ct. App. 1998).  We have interpreted the definition of "information compiled in the course of the investigation of a crime" broadly to include records of autopsies, even when the autopsy results in a finding that a crime has not occurred.  *See Althaus v. Evansville Courier Co.*, 615 N.E.2d 441 (Ind. Ct. App. 1993) (holding that if a coroner can satisfy one of the conditions of the autopsy statute, that is sufficient to satisfy the coroner's burden of proving that records are investigatory), *reh'g denied*; *see also Heltzel v. Thomas*, 516 N.E.2d 103 ([Ind. Ct. App.] 1987) (citing reasons for considering a coroner's investigations investigatory records, including the fact that the record may contain "a narrative of the coroner's observations, which may also include the impressions of law enforcement personnel present who are required to assist the coroner" and that "at the time of a death investigation by the coroner, it is often difficult to determine whether that particular case will be the subject of a criminal prosecution"), *trans. denied*.  Contrarily, we have held that a subpoena is not the type of public record which would automatically fall into the category of "information compiled in the course of the investigation of a crime."  *Evansville Courier v. Prosecutor, Vanderburgh Cnty.*, 499 N.E.2d 286, 288 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*.

*Id.* at 871. We then agreed with the police department that the defendant's "requested records were investigatory because they were compiled by [the police department] during the investigation of [the defendant's] . . . case." *Id.*

Thus, consistent with the plain text of the statute and pursuant to our holding in *Lane-El*, we conclude that the trial court erred when it entered summary judgment for Fox 59. It would be incongruous to hold, as we did in *Lane-El*, that 9-1-1 calls may be withheld from public disclosure when requested directly from the law enforcement agency that compiled them, but then to hold otherwise when the records are instead sought from the dispatch center that originally received the calls. One purpose for the exception for investigatory records of law enforcement agencies is not to compromise the integrity of ongoing criminal investigations, and investigatory records compiled by our law enforcement agencies often originate outside those agencies. That purpose would not be served if the exception applied only to requests made directly to law enforcement or to records that originated with the law enforcement agency.

Fox 59's argument on appeal would effectively nullify APRA's exception for the investigatory records of law enforcement agencies. As the State explains in its amicus brief on behalf of the Dispatch Center:

> [Fox 59] argued below that a record may be disclosable under the investigatory records exception if requested from one agency[] but not disclosable if requested from a law enforcement agency. If interpreted in this way, the exception loses much of its utility. This is particularly true today because information is often stored in electronic form. It would be nearly impossible for a law

enforcement agency to ensure a record is not publicly disclosed by another agency short of physically seizing a computer hard drive or other electronic storage device. In other words, multiple agencies have "possession" of a record when stored in electronic form, and if the crux of disclosure is from which agency a record is requested, rather than if a law enforcement agency had compiled the record, the investigatory records exception ceases to serve its purpose.

[Fox 59] also misinterprets the language of the exception by essentially reading "compiled" to mean "created." Even if a record is created outside of a criminal investigation, it may still be compiled for such a purpose. The plain language of the statute must govern, and to hold as much facilitates the underlying purpose of the exception—to facilitate the investigation and prosecution of crimes.

State's Br. at 8-9 (citations omitted). We agree with the State's analysis.

[17]     We briefly address three remaining points raised by Fox 59 on this issue. First, Fox 59 asserts that the Dispatch Center failed to designate evidence in response to the motion for summary judgment that would create a genuine issue of material fact as to whether the 9-1-1 calls were in the actual possession of the Carroll County Sheriff's Department or the Carroll County Prosecutor. We cannot agree. The Dispatch Center designated Detective Rector's affidavit regarding the 9-1-1 calls, in which Detective Rector stated that the public release of the calls would compromise the ongoing investigation. Moreover, Fox 59 designated the Dispatch Center's initial response to the APRA request, in which the Dispatch Center stated that the local sheriff's department and prosecutor were "exercising their discretion not to permit disclosure" of the 9-1-

1 calls. Appellant's App. Vol. II at 57. A reasonable finder of fact could infer from the designated evidence that local law enforcement agencies exercised control over the records. Accordingly, we reject Fox 59's argument that it is entitled to summary judgment based on the designated evidence.

[18] Fox 59 also asserts that this Court must defer to the PAC's original determination in Fox 59's favor. Fox 59 is simply not correct on this point. As we have explained:

> The Public Access Counselor is appointed by the Governor. I.C. § 5-14-4-6. The Public Access Counselor has the authority, among other things, to provide guidance to public agencies and officials regarding Indiana's public access laws. I.C. § 5-14-4-10. This authority includes the power "[t]o issue advisory opinions to interpret public access laws . . . ." *Id.* Advisory opinions, by definition, are "nonbinding statements." Black's Law Dictionary 1265 (10th ed. 2014).

> Our General Assembly created the Public Access Counselor position to provide parties with efficient—but, correspondingly, nonbinding—advice regarding compliance with Indiana's public access laws. In light of that purpose, a party "is not required to file a complaint" with the Public Access Counselor "before filing an action" in the trial court for an alleged violation of Indiana's public access laws. I.C. § 5-14-5-4. As such, when a complaint is filed in a trial court after the Public Access Counselor has rendered an advisory opinion on the matter, the court may find the Public Access Counselor's opinion persuasive but the court owes no deference to that opinion.

*Groth*, 67 N.E.3d at 1111 n.4.  Thus, we are not bound by the PAC's opinion.[2]

Third, Fox 59 asserts several versions of its proposition that "[t]he public policy underlying APRA requires a liberal construction" of the disclosure requirement and "narrow construction of its exceptions."  *Id.*  Amici for the Reporters Committee for Freedom of the Press and for Sixteen Media Organizations also rely on broad policy concerns in their brief in support of Fox 59, adding several examples of where media access to 9-1-1 calls has produced valuable public information.  *See* Reporters Committee Amici Br. at 10-17.  Be that as it may, the best evidence of our General Assembly's intent regarding the scope of the APRA exception for the investigatory records of law enforcement agencies is the language of the statute itself, which is unambiguous.  This Court has no discretion to consider what other policies might be important.  We find Fox 59's and the amici's arguments on this issue unpersuasive and instead apply the unambiguous statutory language.

### Issue Two:  Substitution of Fox 59 for Hasnie

The Dispatch Center's other argument on appeal is that the trial court abused its discretion when it permitted Fox 59 to substitute itself for Hasnie as the real party in interest in these proceedings after Hasnie had left her employment at Fox 59.  Indiana Trial Rule 17 states that "[e]very action shall be prosecuted in

---

[2]  Indeed, the Dispatch Center is quick to point out that the PAC's opinion here does not appear to be consistent with prior PAC opinions.  Appellant's Br. at 22-23 (citing two prior PAC opinions).

the name of the real party in interest," and our trial rules grant courts the authority to substitute parties as appropriate within the court's discretion. *E.g.*, Ind. Trial Rule 25. "An abuse of discretion is when the decision is clearly against the logic and effect of the facts and circumstances." *Bennett v. State*, 119 N.E.3d 1057, 1058 (Ind. 2019). An abuse of discretion also occurs "when the trial court misinterprets the law." *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 152 (Ind. 2019).

[21] The Dispatch Center asserts that Fox 59 was not the real party in interest to Hasnie's original APRA complaint. According to the Dispatch Center, "[o]nly the party making the [original] request has standing to bring an action under APRA." Appellant's Br. at 36. In support of that argument, the Dispatch Center cites Indiana Code Section 5-14-3-9, which refers to the "person making the request" under APRA. Further according to the Dispatch Center, that language prohibits the person who filed the APRA request or originally captioned the complaint from being an agent for a business. The Dispatch Center also asserts that any benefit that Hasnie's request would have brought to Fox 59 would have been only "incidental." *Id.* at 37.

[22] We reject the Dispatch Center's argument on this issue. As Fox 59 points out:

> Hasnie submitted the [APRA] request . . . in the course of her employment and as an agent of Fox 59. Fox 59 was the real party in interest from the outset of this litigation . . . as Hasnie's actions . . . were solely in furtherance of Fox 59's interests.

Appellee's Br. at 36. Fox 59's assertions are readily supported by the facts and circumstances that were before the trial court when it considered Fox 59's request to substitute itself for Hasnie. There is no dispute that Hasnie was employed as a news reporter for Fox 59 at the time of her APRA request and complaint; that she sought the records not out of some personal curiosity but pursuant to that employment; and that, had she obtained the records, she would have broadcast them on Fox 59 to, ostensibly, Fox 59's benefit. Accordingly, the trial court did not abuse its discretion when it permitted Fox 59 to substitute itself for Hasnie after she left her employment with Fox 59.

## Conclusion

[23] In sum, we hold that the trial court erred when it entered summary judgment for Fox 59 and concluded that the Dispatch Center was not entitled to withhold the 9-1-1 calls as investigatory records of law enforcement agencies. However, we hold that the trial court did not abuse its discretion when it substituted Fox 59 for Hasnie as the real party in interest. Thus, we affirm in part, reverse in part, and remand for further proceedings.

[24] Affirmed in part, reversed in part, and remanded for further proceedings.

Crone, J., and Tavitas, J., concur.